CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 10, 2018

LETTER TO COUNSEL

RE: *Deborah T. v. Commissioner, Social Security Administration*;[1]
Civil No. SAG-17-3796

Dear Counsel:

On December 22, 2017, Plaintiff Deborah T. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for disability benefits. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 12, 17. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed a claim for Disability Insurance Benefits ("DIB") on August 30, 2012, alleging a disability onset date of February 15, 2010. Tr. 227-28. Plaintiff's Date Last Insured ("DLI") is June 30, 2011, so she had to establish disability on or before that date to qualify for benefits. Tr. 18. Her claim was denied initially and on reconsideration. Tr. 113-16, 121-22. A hearing was held on March 31, 2016, before an Administrative Law Judge ("ALJ"). Tr. 33-89. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 16-26. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 1-7, so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that, through her DLI, Plaintiff suffered from the severe impairments of "degeneration of the cervical and lumbar spine, disc bulge, obesity, carpal tunnel syndrome, status post release, arthralgias and arthroscopy of left knee." Tr. 18. Despite these impairments, the ALJ determined that, through her DLI, Plaintiff retained the residual functional capacity ("RFC") to:

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

> perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes or scaffolds; she can perform occasional balancing, stooping, crouching and crawling; she can have no more than occasional exposure to extreme cold, heat and vibrations; she can have no exposure to workplace hazards and she can frequently use the right hand.

Tr. 21. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. Tr. 25-26.

In support of her appeal, Plaintiff advances several arguments: (1) that the ALJ erred at step two by declining to find depression, plantar fasciitis, rheumatoid arthritis, cervical and lumbar stenosis, and multiple body arthralgias to be severe impairments, ECF 12-1 at 8-9; (2) that the ALJ erred in evaluating Listings 1.02 and 1.04, ECF 12-1 at 9-11; (3) that the ALJ erred in discounting Plaintiff's subjective assertions of disabling pain and other symptoms, ECF 12-1 at 11-21; (4) that the ALJ erred in evaluating the medical opinions and other evidence, ECF 12-1 at 13-14, 21-23; and (5) that the ALJ erred in evaluating the VE evidence, ECF 12-1 at 23-27. Each argument lacks merit for the reasons discussed below.

First, Plaintiff asserts that the ALJ should have found additional impairments to be "severe." An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1522. The claimant bears the burden of proving that an impairment is severe. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, the ALJ adequately considered the relevant impairments at step two. Tr. 18-20. The ALJ specifically considered both plantar fasciitis and depression, but explained that neither causes more than minimal work-related functional limitations. Tr. 18-20. In making that finding with respect to depression, the ALJ appropriately employed the special technique for evaluation of mental impairments. Tr. 18-20. Plaintiff, who bears the burden of proving the severity of each impairment, cites no specific evidence to suggest or establish that her plantar fasciitis or depression is in fact severe. The other "impairments" Plaintiff cites, specifically "positive rheumatoid factor/rheumatoid arthritis, cervical and lumbar stenosis, and multiple body arthralgias," ECF 12-1 at 9, overlap in terms of their symptoms with the impairments deemed severe by the ALJ: "degeneration of the cervical and lumbar spine, disc bulge, . . . [and] arthralgias." Tr. 18. Moreover, in the RFC analysis, the ALJ specifically noted that "there was no diagnosis of rheumatoid arthritis prior to the DLI." Tr. 23. Accordingly, I find no error in the ALJ's evaluation of Plaintiff's impairments at step two. Moreover, even if there had been some error, it would be harmless. Because Plaintiff made the threshold showing that her other impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments, both severe and non-severe, that significantly impacted Plaintiff's ability to work prior to her DLI. *See* 20 C.F.R. § 404.1523. Any step two error, therefore, does not necessitate remand.

Next, Plaintiff asserts that the ALJ should have found her to meet the criteria of Listings 1.02 and 1.04. ECF 12-1 at 9-11. Listing 1.02A, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A), requires that Plaintiff establish an "inability to ambulate effectively," defined as:

>an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. . . [;] having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b). Plaintiff is correct that the section of the ALJ's opinion evaluating Listing 1.02A is deficient. In considering whether Plaintiff had established an inability to ambulate effectively, the ALJ cited only to Plaintiff's ability to shower, do laundry, and sit, which are not activities involving significant, if any, ambulation. Tr. 20. However, I conclude that the ALJ's error, as to Listing 1.02A, is harmless.

In reaching that conclusion, I have considered the relatively recent Fourth Circuit cases of *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), and *Fox v. Colvin*, 632 Fed. App'x 750 (4th Cir. 2015) (unpublished) (per curiam), which are sometimes cited for the proposition that the court must remand any case presenting insufficient analysis, without conducting its own independent review of the record. In *Radford*, the Court found the ALJ's decision to be "devoid of reasoning," in that the ALJ did not support the conclusory assertion that the claimant's impairments did not meet a listing. 734 F.3d at 295. The Court concluded that the ALJ's lack of explanation rendered it "impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings," but noted that, in *Radford*, there was "probative evidence strongly suggesting that [the claimant] meets or equals" the pertinent listing, plus a failure by the ALJ to indicate why more weight was assigned to the medical opinions of the state agency physicians than to those issued by the plaintiff's treating physicians. *Id.* at 295-96.

In *Fox*, the Court similarly determined that the ALJ "offered nothing to reveal *why* he was making his decision" about the listings, despite "[i]nconsistent evidence" in the record. 632 Fed. App'x at 755 (emphasis in original). In that circumstance, the Court declined to "speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record," and instead remanded the case to the ALJ. *Id.*

The present case is distinguishable from *Radford* and *Fox* because, here, there is no probative evidence inconsistent with the ALJ's finding that Plaintiff did not meet or equal Listing 1.02 prior to her DLI. Plaintiff's medical evidence shows no mention of any significant knee impairment prior to June 30, 2011. *See* Tr. 397 (report of general joint pain prior to the

alleged onset date referencing only "mild crepitus" in the knees, and recommending weight reduction); Tr. 440 (record from April, 2010 indicating "joint aches on and off still . . . much better since she retired from being a meat cutter"); Tr. 492 (record from January, 2011 noting that Plaintiff still had inflammatory joint pain, but would like to try exercise, weight loss, and use over-the-counter pain relief as needed). The vast majority of the medical records during the relevant period pertained not to Plaintiff's knees or other generalized pain, but to cervical issues, carpal tunnel syndrome, acid reflux, and thyroid issues. Similarly, the medical records do not reflect that Plaintiff had any particular difficulty with walking or any need to use a cane prior to her DLI. Instead, as the ALJ noted, a medical record from February 2, 2011, indicates that Plaintiff experienced indigestion with jaw pain and heart racing once "while shoveling snow" and a second time "on the treadmill." Tr. 493. Additionally, on February 7, 2011, Plaintiff completed an exercise stress test involving six minutes and thirty seconds of "treadmill exercise." Tr. 499. The notes did not indicate any difficulty with walking. Finally, the ALJ also cited to medical records from Plaintiff's treating physician on June 13, 2011, about two weeks before the DLI, noting that Plaintiff presented with "leg pain . . . mostly in bilateral calf area [which] started 2 days after doing some painting." Tr. 647. The doctor further noted, "There is no increased pain with ambulation. In fact he [sic] usually feels better after walking." Tr. 647. Given that the defining criteria for Listing 1.02A is an inability to ambulate effectively, Plaintiff has not and cannot put forth any credible evidence that her impairments during the pertinent period met or equaled each requirement of Listing 1.02A. This is not an instance where "[i]nconsistent evidence abounds, . . . 'leav[ing the court] to wonder' in such a way that [the court] cannot conduct 'meaningful review.'" *See Fox*, 632 Fed. App'x at 1 (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)); *see also Brown v. Colvin*, 639 Fed. App'x 921, 923 (4th Cir. 2016) (unpublished) (per curiam) (remanding the case when the decision of the ALJ was deficient despite the Commissioner's contention that the listing clearly was not met, finding that the claimant's "medical record [was] not so one-sided" that the court could say the listing was not met).

Because there is quite literally no evidence that Plaintiff's impairments met or equaled Listing 1.02 prior to her DLI, and in fact substantial evidence that they did not, there is "no question but that [the ALJ] would have reached the same result notwithstanding [the] initial error." *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming ALJ's decision despite error in rejecting severity of subjective symptoms based solely on objective medical evidence). Accordingly, the ALJ's error in considering Listing 1.02 was harmless. *See id.*

Turning to Listing 1.04, ALJ appears to have correctly stated that Plaintiff "presented no clinical evidence [of] . . . spinal arachnoiditis . . . lumbar spinal stenosis . . . [or] nerve root compression, consistent limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss." Tr. 21. In fact, Plaintiff's argument does not establish the presence of each of those criteria, and instead mentions factors such as "tenderness to palpation" and "chronic pain," which are not among the criteria of the listing. ECF 12-1 at 10-11. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that her impairment

meets or medically equals a listed impairment. *Kellough v. Heckler,* 785 F.2d 1147, 1152 (4th Cir. 1986). In trying to meet that burden here, Plaintiff's generic citation to hundreds of pages of medical records does not assist this Court. ECF 12-1 at 10. Instead, a review of the entire medical record supports the ALJ's assessment that each of the relevant criteria of Listing 1.04 are not present. Thus, I find no error in the ALJ's assessment of Listing 1.04.

Next, Plaintiff asserts that the ALJ relied only on a lack of objective medical evidence to discredit her subjective complaints of disabling pain and other symptoms. Pl. Mot. 11-21. However, in contrast, the ALJ relied upon Plaintiff's own reports of her activities to contradict her alleged symptoms prior to the DLI. Tr. 23 ("[S]he even reported that she experienced chest pain while shoveling snow[], painting using a ladder and on the treadmill, which is inconsistent with disabling nonuse of her hands.").[2] Thus, the ALJ appropriately considered Plaintiff's subjective statements, in addition to the objective results from her medical examinations, to determine her condition during the relatively remote period preceding her DLI. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence.

Next, Plaintiff posits that the ALJ's RFC determination did not include an appropriate function-by-function analysis, particularly as to interference with her ability to pay attention and concentrate due to pain. Pl. Mot. 20-21. However, the ALJ's analysis of the medical evidence is clear: the treatment notes preceding June 30, 2011 do not support allegations of disabling pain, both as to the objective findings and examination results contained in those records, and as to Plaintiff's reports of her own activities. Tr. 23.

Plaintiff also contends that the ALJ assigned insufficient weight to opinions from her various treating physicians: Drs. Ramirez, Saez, Hertzman, and White. ECF 12-1 at 21-23. However, the ALJ assigned "significant weight" to the treatment notes and findings of Drs. Saez and White prior to the DLI. Tr. 24. The ALJ also assigned "partial weight" to the 2016 opinion of Dr. Ramirez, explaining that more weight was attributed to the pre-DLI notes and findings. Tr. 24-25. The ALJ assigned no weight to the opinion issued by Dr. Hertzman, because all of Plaintiff's visits with Dr. Hertzman were after her DLI. Tr. 23-24. Plaintiff's contention that the conditions she received treatment for after her DLI had manifested prior to the DLI is not supported by the record, at least to a degree that would suggest that the conditions were disabling during or before June, 2011. Moreover, this is not a case in which the ALJ "played doctor" or

---

[2] Plaintiff correctly notes that the ALJ erred in referring to a ladder, since the report actually said, "step stool." ECF 12-1 at 15. The basic premise, though, is that painting and climbing up and down is a physically taxing activity that undermines Plaintiff's assertion of disabling pain. That premise holds true despite the mistake.

made findings unsupported by any medical source. The non-examining State agency physicians reviewing Plaintiff's case made two differing assessments: one found Plaintiff able to perform a restricted range of medium work, although the ALJ assigned that opinion "little weight," because it did not adequately consider Plaintiff's degenerative disease. Tr. 24. The other non-examining physician determined that Plaintiff would be capable of a reduced range of light work, which is consistent with the RFC eventually found by the ALJ. Tr. 21, 24. The ALJ's adoption of that opinion (and determination of an RFC more restrictive than that found by another medical source) is supported by the sparse medical record prior to Plaintiff's DLI.

Finally, Plaintiff alleges that the VE testimony did not constitute substantial evidence upon which the ALJ could base her conclusion. ECF 12-1 at 23-27. Plaintiff contends that the ALJ improperly adopted the first hypothetical posed, instead of the two later hypotheticals posed by the ALJ or the more restrictive hypothetical suggested by Plaintiff's counsel. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. 1999) (unpublished table decision), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations, *see Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). The ALJ's first hypothetical question to the VE, which accurately incorporated the RFC assessment she made, was permissible without including any additional limitations that the ALJ did not deem valid. Essentially, this argument reiterates the RFC arguments discussed above. However, the ALJ's RFC assessment was adequate in light of the limited medical evidence of record suggesting disability prior to the DLI. Thus, the hypothetical setting forth that RFC assessment was equally valid.

The Plaintiff also contends that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). ECF 12-1 at 26-27. The RFC limited Plaintiff to "frequent[] use [of] the right hand," and, according to Plaintiff, two of the jobs identified, mail clerk and garment folder, require constant use of the bilateral hands. *Id.* However, the mail clerk position involves only frequent handling and fingering, and thus could be performed with Plaintiff's RFC restrictions. U.S. Dep't of Labor, *Dictionary of Occupational Titles ("DOT")* § 209.687-026, Mail Clerk (4th ed. 1991). A claimant is not disabled if she is able to engage in "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Thus, even assuming that the garment folder job requires skills beyond Plaintiff's RFC, the error would be harmless, because the other identified positions of school bus monitor (with 80,000 jobs nationally and 1,300 jobs locally), Tr. 26, and mail sorter (with 119,000 jobs nationally and 3,300 jobs locally), *id.*, exist in significant numbers. *See Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy.") (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)). Accordingly, any error in the ALJ's reliance on Plaintiff's ability to perform the job of garment folder was harmless. Moreover, though Plaintiff asserts that the job of school bus monitor would involve more than occasional balancing, stooping, crawling, and exposure to vibrations, the DOT indicates that those features are not present. *DOT* § 372.667-

042, School Bus Monitor. Thus, the VE's testimony that a hypothetical individual with Plaintiff's RFC could work as a school bus monitor was consistent with the DOT.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 12, is DENIED, and Defendant's Motion for Summary Judgment, ECF 17, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                                Sincerely yours,

                                                /s/

                                                Stephanie A. Gallagher
                                                United States Magistrate Judge